UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BROOK T. FADLEY, | CASE NO. 1:12CV3084 |
| Plaintiff, | JUDGE JAMES S. GWIN |
| v. | Magistrate Judge George J. Limbert |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendant. | |

Brook T. Fadley ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case with prejudice.

**I.      PROCEDURAL AND FACTUAL HISTORY**

On March 17, 2009, Plaintiff protectively applied for benefits alleging disability beginning on the same date. ECF Dkt. #12 ("Tr.") at 72.[2] Plaintiff's date last insured is March 31, 2011. Tr. at 201. The SSA denied Plaintiff's applications initially and on reconsideration. Tr. at 65-68. Plaintiff requested an administrative hearing, and on June 20, 2011, an ALJ conducted an administrative hearing *via* telephonic conference and accepted the testimony of Plaintiff, who was represented by counsel, and Linda Augins, an impartial vocational expert ("VE"). Tr. at 40-64.

At the hearing, Plaintiff asked the ALJ to reopen her prior SSI and DIB applications filed on February 22, 2007 (and initially denied on April 27, 2007), and to amend the onset date in the

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]References to the administrative record in this case refer to the ECF docket number of the cited document and the page number assigned to cited pleading by the ECF system, which can be found in the search box at the top of the page on the ECF toolbar.

current applications to November 16, 2003, the date of an automobile accident that Plaintiff believes precipitated her physical and mental impairments, as well as the onset date alleged in the previously filed applications.

At the hearing, Plaintiff also notified the ALJ that she had performed full-time work as a home visitor for a Head Start program from August of 2008 to March of 2009, and performed part-time work at an in-home day care center from October of 2010 to February 15, 2011, then full-time work at the in-home day care center from February 16, 2011 to the present. Tr. at 44-45. As a consequence, Plaintiff limited her disability applications to two closed periods: (1) February 1, 2006 to August 31, 2008, and (2) March 1, 2009 to October 31, 2010. Tr. at 45.

On April 20, 2011, the ALJ issued the Decision declining to reopen the prior applications and denying benefits. Tr. at 27-37. Plaintiff filed a request for review, which was denied by the Appeals Council on June 20, 2012. Tr. at 1-5.

On December 20, 2012, Plaintiff filed the instant suit seeking review of the Decision. ECF Dkt. #1. On May 28, 2013, with leave of Court, Plaintiff filed a brief on the merits. ECF Dkt. #16. On June 25, 2013, Defendant filed a brief on the merits. ECF Dkt. #17. On July 16, 2013, with leave of Court, Plaintiff filed her reply brief. ECF Dkt. #19.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

As a matter of initial concern, the ALJ considered Plaintiff's request to reopen her previously filed applications that were denied on April 27, 2007. The Commissioner may find good cause to reopen a previous application[3] where (1) new and material evidence is furnished; (2) a clerical error in the computation or recomputation of benefits was made; or (3) the evidence that was considered in making the determination or decision clearly shows on its face that an error was made. 20 C.F.R. §§ 404.989 and 416.1489. Presumably, Plaintiff relied upon the new and material evidence prong of the test, because she has not shown any error with respect to the previous decision. Here, the ALJ, considering the evidence in the record from April 28, 2007 (the day after the previous decision

---

[3]Certain time limitations are placed upon a motion to reopen a prior application, however, the ALJ conceded that the required time limitations have been met in this case.

was issued), concluded that the situation was not sufficient under the "good cause" regulations to reopen the prior applications. Accordingly, the ALJ only considered Plaintiff's disability applications as they applied to the second closed period, from March 1, 2009 to October 31, 2010.

The ALJ determined that Plaintiff, who was thirty-two years of age the date of the automobile accident and forty years of age on the date of the hearing, suffered from fibromyalgia, depression, and anxiety, which qualified as a severe impairment under 20 C.F.R. §404.1520(c) and 416.920(c), beginning March 1, 2009. Tr. at 26. The ALJ characterized Plaintiff's lower back pain, abdominal problems, and headaches as non-severe impairments. Tr. at 29-31. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526 ("Listings"). Tr. at 31.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.697(b) except: Plaintiff can climb ramps and stairs frequently, but can only occasionally climb ladders, ropes, and scaffolds. She is able to kneel, crouch, crawl, and stoop occasionally and she can balance frequently. Plaintiff has the residual functional capacity to perform work activities that do not involve concentrated exposure to extreme cold and vibration. She retains the ability to perform tasks that are low stress, which are defined as activities involving occasional changes to the work setting and occasional work related decision-making. *Id.* at 28.

The ALJ ultimately concluded that, although Plaintiff could not return to her past relevant work, there were jobs that existed in significant numbers in the national economy that Plaintiff can perform, including the representative light/unskilled occupations of recreation aid and mail sorter. Tr. at 33. As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits.

### III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,*

486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.     ANALYSIS

Plaintiff advances three arguments in this appeal. First, Plaintiff contends that the ALJ erred when he failed to accommodate Plaintiff's moderate limitations in concentration, persistence and pace. Next, Plaintiff contends that the ALJ erred in discrediting her testimony regarding the severity of her limitations. Finally, Plaintiff asserts that the ALJ failed to evaluate the medical evidence beginning on November 26, 2003 to the commencement of her substantial gainful activity in 2008.

### A.     Medical history

Plaintiff was seen in the emergency department on November 16, 2003 after a head-on automobile collision that caused loss of consciousness and seizure. Tr. at 339. Following the accident, Plaintiff complained of constant pain. Tr. at 352. She was found to have decreased range of motion and muscle strength, as well as positive trigger points. Tr. at 353. She continued treatment into early 2004 at Layton Physical Therapy, Inc. without resolution of her pain. Tr. at 345-351. For the next several years, Plaintiff underwent various treatments to alleviate her pain.

Plaintiff treated with Frank Sailors, D.O., from March 5, 2008 through June 12, 2009. Tr. at 431. She presented to Dr. Sailors with pain and diminished range of motion. Dr. Sailors' diagnosed fibromyalgia. On July 30, 2008, Plaintiff reported that she suffered severe pain throughout her body, and that medication and chiropractic treatment, though initially effective, no longer resolved her pain. Tr. at 429.

Plaintiff began seeing Charmaine Gutjahr, M.D. on July 30, 2008 seeking treatment for chronic pain syndrome and fibromyalgia. Tr. at 417. Although she had a significant initial response

to Zoloft, the effectiveness of the medication diminished over time. She also suffered side effects of lightheadedness and dizziness. Tr. at 412. On March 18, 2009, Plaintiff reported fatigue, difficulty focusing, and an inability to perform her work Tr. at 404. On June 11, 2009, Dr. Gutjahr indicated that Plaintiff was no longer amenable to medication. The treatment notes read, "Return to work – altered work schedule as [the] job permits." Tr. at 401. Plaintiff requested a rheumatology consultation because of her chronic myalgia.

Plaintiff initially presented to treating rheumatologist David R. Mandel, M.D., on June 10, 2009. Tr. at 489-490. At that time, Dr. Mandel indicated that the clinical and physical findings fit best with a diagnosis of fibromyalgia, and he prescribed a TENS unit. Tr. at 490. During a follow-up appointment one week later, Dr. Mandel recommended a conservative treatment plan including therapeutic exercises, range of motion activities, manual therapy techniques, electrical stimulation, and a home exercise program. Tr. at 488.

Margaret Zerba, Ph.D., evaluated Plaintiff on August 15, 2009. Tr. at 453-56. At that time, Dr. Zerba observed that Plaintiff was fully oriented, cooperative, spontaneous, depressed, and had an organized and coherent thought process, good insight and judgment, and no suicidal or homicidal thoughts. Tr. at 453-55. Plaintiff recalled seven digits forward and four digits backwards, she recalled one of three objects three minutes later, calculated serial threes and three single digit multiplication problems correctly, and "[o]verall the clinical impression of [Plaintiff's] cognitive functioning is that she is functioning within the average range of intelligence." Tr. at 455. Dr. Zerba provided a diagnosis of adjustment disorder with anxiety and depression and assessed a global assessment of functioning ("GAF")[4] score of 51. Tr. at 456.

Although Dr. Zerba indicated that Plaintiff's ability to withstand the stress and pressures of day-to-day work activity was moderately impaired, she reported that Plaintiff's ability to understand

---

[4]A GAF score involves a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, *e.g.*, how well or adaptively one is meeting various problems-in-living. A score in the range of fifty one to sixty indicates moderate symptoms.

-6-

and follow instructions, ability to sustain attention for the performance of simple, repetitive tasks, and ability to relate to others in the workplace were not impaired. Tr. at 456.

Treatment records from Timothy M. French, D.C., establish that Plaintiff reported systemic pain and fatigue in September of 2009.  Tr. at 524.  X-rays were taken, which revealed mild degenerative changes in Plaintiff's cervical and lumbar spine.  Plaintiff underwent spinal manipulation and was encouraged to begin a home stretching regimen.  Tr. at 522.

Plaintiff presented to neurologist Gary R. Kutsikovich, M.D., on February 25, 2010 and March 25, 2010 with complaints of headaches and extreme pain. Tr. at 538.  Examinations revealed mild tenderness in her mid lumbosacral paraspinal muscles, no ataxia regarding her coordination, a steady gait, and full motor strength. Tr. at 537-538. Dr. Kutsikovich concluded that Plaintiff had a lumbar sprain with an occasional radicular component, which was addressed with medication. Tr. at 537-38.  His treatment notes indicate that Plaintiff had an MRI of the brain, with normal results ruling out demyelination. Tr. at 537.

On January 25, 2010, Plaintiff presented to Lillian Lopez, D.O. complaining of headaches, which had persisted for seven years.  Plaintiff advised Dr. Lopez that Dr. Gutjahr discontinued her treatment because she could not take medication and that she had stopped treating with Dr. Mandel "because all he did was push medication." Tr. at 549.  Dr. Lopez characterized Plaintiff's fibromyalgia as a "tough case," due to her inability to tolerate medication and she referred Plaintiff to another rheumatologist.

Progress notes from Signature Health from January through April 2010, document a diagnosis of depression and anxiety, that were treated conservatively with talk therapy. Tr. at 540-547.  Therapy included encouraging Plaintiff to set and achieve goals and teaching her additional coping skills.  Plaintiff failed to attend all scheduled appointments. Tr. at 540-44.

Plaintiff attended a neurology consultation with Gary R. Kutsikovich, M.D., on February 25, 2010, to address her headaches and ongoing pain. Tr. at 538.  Dr. Kutsikovich concluded that she would benefit from Neurontin or Cymbalta, but Plaintiff indicated that she "would prefer to hold off on prophylactic medication at this time." Tr. at 538.  Although Dr. Kutsikovich recommended a follow-up appointment in three weeks, it does not appear that Plaintiff returned to his office.

On June 10, 2010, Plaintiff saw Margarita Brin, M.D. Tr. at 552. Dr. Brin indicated that Plaintiff "has been in a lot of pain secondary to her fibromyalgia," and that she was not taking any medication because she "had side effects from a lot of meds." Tr. at 552. Dr. Brin noted that Plaintiff had not tried Lyrica or Savella. At the time, Plaintiff was taking vitamins but experiencing no pain relief. Dr. Brin prescribed Pregabalin (Lyrica).

Plaintiff returned for follow-up with Dr. Mandel on August 19, 2010 after a one year gap in treatment. Tr. at 611. At that time, Plaintiff was taking Pregabalin and Tramadol. She claimed that her fibromyalgia symptoms were more severe, she was experiencing more pain and was unable to sleep. Dr. Mandel prescribed Ambien and a low dose of Savella (due to Plaintiff's medication sensitivity) and recommended a follow-up appointment in two months. Plaintiff returned to Dr. Mandel on October 18, 2010. Plaintiff reported that she had not slept in four days and that she was in a great deal of pain. She further reported that Savella was not effective and Ambien caused suicidal thoughts and severe depression.

### B.     State agency assessments

State agency physician Tasneem Khan, Ed.D., prepared a mental residual functional capacity assessment on September 9, 2009. Tr. at 471-72. Dr. Khan opined that Plaintiff was not significantly limited in eighteen out of twenty mental activities of functioning, and only moderately limited in the remaining two activities – the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes in the work setting. Tr. at 471-72. Specifically, Dr. Khan indicated that Plaintiff "retains the capacity to learn and perform simple and multi-step tasks in a routine and predictable environment." Tr. at 473. Dr. Khan also acknowledged her ability to perform daily activities including cooking simple meals, house cleaning, laundry, and managing the household finances. Tr. at 473.

State agency physician Elizabeth Das, M.D., prepared a physical residual functional capacity assessment on October 19, 2009. Tr. at 509-16. Dr. Das opined that Plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push and/or

pull a limited amount in her lower extremities. Tr. at 610. Dr. Das indicated that Plaintiff could frequently climb ramps and stairs, could balance, stoop, kneel, crouch, crawl, and occasionally climb ladders, ropes, and scaffolds. Tr. at 511. Plaintiff had no manipulative, visual, or communicative limitations. Tr. at 512-13. Lastly, Dr. Das opined that Plaintiff should avoid exposure to extreme cold and vibration. Tr. at 513.

### C.     Hearing testimony

At the hearing, Plaintiff testified that she lived with her thirteen year-old daughter. Tr. at 47. Plaintiff arose between 7:30 and 8:00 each morning and stretched for roughly an hour. She still experienced a lot of pain and got very little sleep.  She went to work and did some cooking and chores when she returned from work and was in bed at 10:00 p.m.  Plaintiff worked at an in-home day care center. Tr. at 48.  She earned $8 an hour, and supplemented her income with child support, food stamps, and Medicaid.

Plaintiff further testified that after March 2009, but prior to October 2010, she was in a lot of pain, resulting from the physical stress on her body from her previous job at Head Start.  Tr. at 48.  Plaintiff stated that her body "shut down." Tr. at 49.  She experienced pain in her hips, knees, back, and joints, in addition to muscular pain. Tr. at 52.  Following her 2003 accident, she suffered pain "in every inch of [her] body" as well as severe headaches.  Tr. at 55.  She stated that Drs. Saylors and Gutjahr encouraged her to file her disability claims.  Tr. at 57.

Plaintiff testified the she was emotionally and mentally overwhelmed, as well as angry and upset that she could no longer do the things she used to do. Tr. at 53.  She conceded that her mental health treatment at Signature Health "help[ed] quite a bit," but that she was unable to continue treatment due to her health and her schedule.  Tr. at 53.

### D.     The ALJ's decision

The ALJ found that Plaintiff has mild restrictions in her activities of daily living, moderate difficulties with regard to concentration, persistence or pace, no difficulties in her social functioning, and no episodes of decompensation. He recognized that Dr. Zerba noted that Plaintiff had no impairment of her ability to perform simple, routine tasks.  Tr. at 29. In rejecting Plaintiff's allegations of disabling pain, the ALJ cited lapses in treatment and the fact that she left therapy

without informing her counselor that she was moving. Further, the ALJ opined that Plaintiff's claims of disabling pain, depression, and anxiety were inconsistent with her conservative course of treatment and her daily activities, which included significant work activity. Tr. at 31. He relied upon the fact that the treatment notes included subjective reports of ongoing pain.

The ALJ gave significant weight to the opinion of Dr. Zerba and Dr. Khan "because the record does not contain persuasive evidence that contradicts their findings." Tr. at 32. The ALJ gave moderate weight to the opinion of Dr. Das, but gave Plaintiff the benefit of the doubt regarding her testimony about pain and fatigue by providing a residual functional capacity that restricts her to performance of work activities in the light exertional range. Tr. at 31.

### E. Plaintiff's arguments

Plaintiff cites *Ealy v. Comm'r of Social Sec.*, 594 F.3d 504 (6th Cir.2010), in support of her first argument that limiting a claimant to low stress work does not adequately address moderate difficulties with concentration, persistence, and pace. Plaintiff argues that the *Ealy* holding applies to all cases wherein an ALJ finds that a claimant has moderate limitations in his or her concentration, persistence, and pace. Plaintiff's argument, however, is not supported by *Ealy*. *Ealy* does not require further limitations in addition to limiting a claimant to "simple, repetitive tasks" for every individual found to have moderate difficulties in concentration, persistence, or pace. See *Ealy*, 594 F.3d 504. Instead, Ealy stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions. See *Id.* In *Ealy*, the claimant presented evidence from the record that showed the claimant's limited ability to maintain attention over time, even when performing simple, repetitive tasks. See *Id*.

Here, unlike *Ealy*, Plaintiff refers to no record evidence to suggest that she had any greater limitations than those identified by the ALJ. In fact, the ALj relied upon Dr. Zerba's opinion that, although Plaintiff had moderate limitations with concentration, persistence and pace, she could nonetheless perform simple, routine tasks. Because the ALJ limited Plaintiff to low stress work, her first argument is not well-taken.

Next, Plaintiff contends that the ALJ erred when he did not credit her testimony regarding debilitating pain during the second closed period. When disability determination that would be fully

-10-

favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, as Plaintiff appears to concede here, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40.  Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence.  *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ found that Plaintiff's impairments could be expected to produce pain and symptoms but not the kind of debilitating pain and symptoms that Plaintiff alleged.   It should be noted that the ALJ did not totally reject Plaintiff's allegations, but rather, he determined that Plaintiff's allegations of the intensity, duration and limiting effects of her symptoms were not substantiated by the objective medical findings or other evidence in the record.

An ALJ is not required to accept a plaintiff's own testimony regarding her pain.  *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). Here, although Plaintiff reported debilitating pain to physicians since her 2003 automobile accident, she nonetheless returned to work for two significant periods of time. Furthermore, during the second closed period, Dr. Gutjahr's treatment notes recommend a return to work with a modified schedule, to the extent a modification was possible. Tr. at 401. The treatment records do not support a worsening of Plaintiff's pain during the second closed period, that is, from March of 2009 to October of 2010. In addition to periods of substantial gainful activity, Plaintiff also demonstrated the ability to perform her activities of daily living.  Accordingly, the undersigned recommends that the Court find

-11-

that the ALJ's determination with respect to Plaintiff's credibility is supported by substantial evidence.

Finally, Plaintiff contends that the ALJ erred in refusing to reopen her prior disability applications. In general, "[a] refusal to reopen a prior application is not a final decision and may not be reviewed by the courts." *Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); see *Harper v. Sec'y of HHS*, 978 F.2d 260, 262-63 (6th Cir.1992); see also *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228 (6th Cir.1990). However, an exception to this rule exists where "a constitutional claim is made in conjunction with a social security benefits case." *Harper*, 978 F.2d at 262-63. In this case, no constitutional claim has been raised, and, as a consequence, the undersigned recommends that the Court find that the ALJ's decision to apply the doctrine of *res judicata* to the prior determinations may not be disturbed.

## VI.　CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's complaint with prejudice.

DATE: February 12, 2014

　　　　　　　　　　　　　　　　　*/s/George J. Limbert*
　　　　　　　　　　　　　　　　　GEORGE J. LIMBERT
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).